**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| WANABEE M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-CV-593-JFJ |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Wanabee M. seeks judicial review of the decision of the Commissioner of the
Social Security Administration ("SSA") denying her claims for disability insurance benefits under
Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C.
§ 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.
For reasons explained below, the Court reverses the Commissioner's decision denying benefits.
Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## I.     Standard of Review

In reviewing a decision of the Commissioner, the Court is limited to determining whether
the Commissioner applied the correct legal standards and whether the decision is supported by
substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial
evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th
Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other
evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,
365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a

whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 57-year-old female, applied for Title II disability insurance benefits on July 15, 2015, alleging a disability onset date of June 1, 2010. R. 17, 175-176. Plaintiff's claim for benefits was denied initially on September 4, 2015, and on reconsideration on November 19, 2015. R. 85-98. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on June 27, 2017. R. 31-81. The ALJ issued a decision on August 23, 2017, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in the national economy. R. 17-26. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff's date last insured was June 30, 2015. R. 19. He found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010, through April 2014, that she did engage in substantial gainful activity for a closed period from April 2014 to August 2014, and that she did not engage in substantial gainful activity from September 2014 through her date last insured of June 30, 2015. *Id.* At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. R. 19-20. He additionally found that Plaintiff had a medically determinable but non-severe impairment of

obesity. R. 20. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 20-21. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the four areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

After evaluating the objective and opinion evidence, and Plaintiff's statements, the ALJ concluded that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium-exertion work as follows:

> [S]he is limited to lifting or carrying 50 pounds occasionally and 25 pounds frequently; standing and walking 6 hours out of an 8-hour day; sitting for 6 to 8 hours out of an 8-hour day; performing simple and routine tasks and some complex tasks allowing for a full range of semi-skilled work; and only have superficial contact with co-workers, supervisors and the public.

R. 21. At step four, the ALJ found that Plaintiff could not perform her past relevant work. R. 24-25. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other unskilled work, such as Floor Waxer, Warehouse Worker, and Dishwasher. R. 25-26. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 26. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.     Issues

Plaintiff raises three allegations of error on appeal: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the ALJ's consistency findings are not supported by

substantial evidence; and (3) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision.[1]

## IV. Analysis

### A. RFC Is Supported by Substantial Evidence

#### 1. ALJ Reasonably Considered Plaintiff's Spinal Problems

Plaintiff argues that, in determining the RFC, the ALJ relied on "boilerplate" statements without explaining how he reached his conclusion that Plaintiff was capable of performing a reduced range of medium-exertion work. Plaintiff particularly takes issue with the ALJ's finding that Plaintiff could lift 50 pounds occasionally, when Plaintiff turned age 55 during the relevant period and had several disc bulges in her lumbar spine.[2]

Although Plaintiff cites to no part of the record in support of her argument that greater physical limitations were warranted, in the "Statement of Facts" section she refers to treatment records from the period of September 2002 to December 2015. Those records show the following: (1) in September 2002, Plaintiff's underwent a lumbar MRI, which revealed mild global disc bulging at L4-L5 (R. 281); (2) in November 2006, Plaintiff was referred by her treating physician to another provider for acupuncture to treat back pain (R. 259); (3) in August 2007, Plaintiff was prescribed Lortab medication for back pain (R. 257); (4) in April 2015, Plaintiff visited Axis Healthcare with complaints of back and leg pain rated at 8-9 out of 10, and her provider assessed

---

[1] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal. Specifically, if the case must be remanded for other reasons, a claimant should not be subject to delays caused by a likely appeal. *See infra* n.5. Because the Court finds no other grounds for reversal, the Court reaches the Appointments Clause issue in Part IV.C.

[2] Plaintiff does not challenge the ALJ's mental RFC findings. Accordingly, the Court limits this discussion to Plaintiff's physical impairments.

her with degenerative disc disease and chronic back pain, prescribing Oxycodone for pain (R. 400-401); (5) in May 2015, Plaintiff presented at the emergency room with lower back pain after falling out of bed earlier that day, and an x-ray revealed narrowed L4-L5 at L2-L3 disc spaces with marginal spurs and mild lower lumbar facet hypertrophy, although physical examination found normal range of motion, no tenderness, diffuse lumbar tenderness, and negative straight leg raising, and Plaintiff was diagnosed with lumbar strain and prescribed medication for pain, inflammation, and muscle spasm (R. 288-293); (6) in July 2015 (shortly after the date last insured) Plaintiff visited Christopher Moses, M.D., for pain management, complaining of radiating low back pain, and Dr. Moses prescribed Oxycodone after observing positive straight leg raising tests on the right, muscle spasms of the lower lumbar area, pain over the L4-S1 level bilaterally and in both sacroiliac joints, decreased lumbar spinal range of motion, and decreased side-bending on both sides (R. 323-324); and (7) from September to December 2015, Plaintiff visited Dr. Moses for pain management (R. 306-322, 329-345).

The Court rejects Plaintiff's arguments and finds the ALJ's discussion of Plaintiff's spinal problems was more than mere boilerplate. The ALJ summarized each of the above records in addressing Plaintiff's back pain, with the exception of Dr. Moses' September to December 2015 treatment notes post-dating the date last insured. R. 22-23. The ALJ explained that this medical evidence "documented the existence of an impairment that could reasonably be expected to produce a certain degree of symptoms," but that Plaintiff's allegations of disabling symptoms were inconsistent with her description of her daily activities during the relevant period of June 2010 to June 2015. R. 23. The ALJ also noted that, although Plaintiff alleged tingling in her legs and hands at the hearing, she did not seek treatment for numbness/tingling from Dr. Moses until July 15, 2015, after the date last insured. R. 23 (citing R. 323-324). After summarizing the relevant

medical evidence and Plaintiff's statements, the ALJ concluded that, "considering the treatment sought, medication prescribed, and diagnostic examination results found," Plaintiff's lumbar strain limited her to a medium-exertion physical RFC. R. 23.

The ALJ was entitled to conclude that the medical evidence of record was consistent with a medium-exertion RFC. As the ALJ indicated in support of his RFC finding, Plaintiff was able to return to work as a home health aide in 2014, at which she was able to assist lifting a 200-pound plus person, sit throughout the day, cook her meals, and clean her house. R. 23 (citing hearing testimony). The ALJ also noted that Plaintiff reported caring for her husband by cooking him breakfast and dinner, cleaning the house, running errands, going to the grocery store, and picking up four tanks of oxygen every other day. *Id.* (citing hearing testimony, R. 211-214 (function report)).

Plaintiff argues that that the ALJ overstated her lifting ability, because she testified at the hearing that she could lift only five pounds and required assistance with lifting her 200-pound patient at work. ECF No. 16 at 2 (citing R. 56-57). Although this evidence provides some support for Plaintiff's allegations of limited ability in lifting, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.") (citation omitted). The cited testimony does not indicate the RFC is unsupported by substantial evidence or that the ALJ's assessment of the opinion and medical evidence was flawed. Moreover, the ALJ accurately characterized Plaintiff's testimony that she was able to "assist lifting a 200-pound plus person."

R. 23 (citing hearing testimony). Even though Plaintiff was between the ages of 52 and 57 during the relevant period and suffered severe back problems, these facts alone do not mandate a finding of a more limiting physical RFC. Plaintiff's argument that the ALJ's assignment of a medium-exertion RFC was a mere "convenience" to avoid finding her disabled is unsupported and lacks merit. ECF No. 13 at 5.

The Court identifies no error in the ALJ's determination of the physical RFC. Plaintiff simply invites the court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### 2.    ALJ Adequately Developed the Record

Plaintiff contends the ALJ erred by failing to develop the record through obtaining additional medical expert testimony regarding Plaintiff's functional limitations. The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised. *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

Plaintiff argues that there is an "absence of evidence establishing her RFC in this case." ECF No. 13 at 7. Plaintiff concedes that a consultative examination would not resolve the issues

in this case, because Plaintiff's date last insured was in 2015. *Id.* She argues, however, that medical expert testimony would support an RFC with greater limitations than the ALJ found.

The Court rejects Plaintiff's arguments and finds the ALJ adequately developed the record. The administrative record demonstrates that the ALJ was not required to develop the record with additional expert opinion evidence. While Plaintiff's objective medical history is somewhat limited during the relevant period of June 2010 to June 2015, the evidence in the record for that period consistently shows conservative and intermittent treatment for back pain, including medications and recommendations for acupuncture. *See* R. 257, 259, 288-293, 400-401.

Plaintiff's argument that the ALJ was obliged to order medical expert testimony lacks merit. As Plaintiff points out, the agency's Hearings, Appeals and Litigation Law Manual ("HALLEX") provides guidance when medical expert opinion evidence may be necessary or otherwise appropriate. *See* HALLEX I-2-5-34(A).[3] For example, an ALJ may, in his discretion, order a medical expert opinion through testimony or responses to written interrogatories when the ALJ "[d]etermines the degree of severity of a claimant's physical or mental impairment"; "[b]elieves [a medical expert] may be able to suggest additional relevant evidence because there is reasonable doubt about the adequacy of the medical record"; "[b]elieves [a medical expert] may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing"; "[i]s determining the claimant's residual functional capacity, e.g., the ALJ may ask the [medical expert] to offer an opinion about the claimant's

---

[3] The HALLEX is a Social Security Administration policy manual that "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council Staff." HALLEX I-1-1-0-1.

functional limitations and abilities as established by the medical evidence of record"; or "[d]etermine[s] the onset of an impairment." HALLEX I-2-5-34(A)(2).[4]

Although medical expert testimony might have been helpful in this case, the Court does not consider the absence of such testimony to constitute reversible error. Plaintiff argues that such testimony would establish that Plaintiff could not lift 50 pounds or work for a full 8-hour day during the relevant period. However, Plaintiff points to no circumstances that would warrant a medical expert opinion, such as a material conflict in the medical evidence, inconclusive treatment notes or tests, or need for further explanation or clarification of the medical evidence. Plaintiff's argument that a medical expert would recommend a more restricted RFC than the ALJ's RFC is mere speculation. Accordingly, the ALJ's failure to order medical expert testimony was not reversible error.

Moreover, contrary to Plaintiff's argument, the ALJ did not need a specific "RFC" opinion to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("The ALJ, not a physician, is charged with determining a claimant's RFC."); 20 C.F.R. § 404.1527(d)(2) (explaining that, while an ALJ considers medical opinions in assessing RFC, the final responsibility for determining an RFC is reserved to the ALJ). The burden to fully develop the record was met in this case, and the ALJ

---

[4] Plaintiff does not contend the ALJ was required to order a medical expert opinion based on the criteria in HALLEX I-2-5-34(A)(1), and the Court identifies no such applicable grounds. *See* HALLEX I-2-34(A)(1) (stating that an ALJ must order a medical expert opinion when (1) the Appeals Council or federal court ordered such an opinion; (2) "[t]here is a question about the accuracy of medical test results reported, requiring evaluation of background medical test data"; or (3) "[t]he ALJ is considering finding that the claimant's impairment(s) medically equals a listing").

had sufficient information to determine Plaintiff's RFC based on treatment records, diagnostic imaging results, and other non-medical evidence. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination). Plaintiff's desire for a more developed record is not an adequate reason to re-weigh the evidence or remand an ALJ's decision that is supported by substantial evidence.

### B. The ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues that the ALJ's consistency analysis was conclusory, and the ALJ mischaracterized Plaintiff's statements in reaching his consistency determination. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7. If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).[5]

---

[5] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, Plaintiff alleges the ALJ erred by failing to link the evidence to his consistency finding and by mischaracterizing Plaintiff's own statements, in concluding that she could perform a reduced range of medium-exertion work between June 2010 and June 2015. The ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22. He explained that, "although the medical evidence documented the existence of an impairment that could reasonably be expected to produce a certain degree of symptoms," Plaintiff's description of her daily activities was "inconsistent with her complaints of disabling symptoms and limitations relating to her back." R. 23. In this regard, the ALJ noted Plaintiff "reported and testified she took care of her significant other by cooking him breakfast; cleaning the house; running errands such as doctor's appointments, going to the grocery store, and picking up four tanks of oxygen every other day; and cooking dinner." *Id.* (citing R. 211-214). The ALJ further noted that Plaintiff reported that "when she was working in 2014, she was able to assist lifting a 200-pound plus person, sit throughout the day, cook her meals, and clean her house." *Id.* The ALJ also noted that

between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Plaintiff did not seek treatment for alleged numbness/tingling in her legs and hands until July 15, 2015, shortly after the date last insured. *Id.* (citing R. 323-324). He also noted that Plaintiff's allegations of disabling mental symptoms were unsupported in the record, noting that there were no treatment records for mental issues during the relevant period.[6] R. 23-24. Based on the "treatment sought, medication prescribed, and the diagnostic examination results found," the ALJ concluded the reduced medium-exertion RFC was appropriate given her lumbar strain. *Id.*

The ALJ's findings are far more than mere boilerplate and account for factors including Plaintiff's activities of daily living, contact with medical providers, and irregular attempts to find relief. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (finding claimant's failure to report symptoms to physician was appropriate factor to support credibility/consistency determination). Plaintiff takes issue with the ALJ's characterization of her activities involving caring for her husband. She points to a November 2015 function report, in which she reported limitations including needing to sit down to dress herself, sometimes doing nothing during the day, using a chair to shower, difficulty standing for long periods to cook, and limiting her cleaning activities. ECF No. 13 at 11-12 (citing R. 210-217). However, the ALJ also considered Plaintiff's hearing testimony, which indicated she performed the activities of cooking, cleaning, running errands, and picking up oxygen tanks for her husband during the relevant period. *See* R. 62-64. The Court identifies no mischaracterization of Plaintiff's activities regarding caring for her husband or performing work as a home health aide, all of which the ALJ reasonably considered to be inconsistent with her complaints of disabling symptoms and limitations and consistent with a reduced range of medium-exertion work. *See* R. 23. It is proper for the ALJ to consider Plaintiff's activities in evaluating her complaints. *See* SSR 16-3p, at *7 (stating that ALJ should consider

---

[6] Plaintiff does not specifically challenge the ALJ's consistency finding with respect to her mental impairments.

claimant's daily activities as part of consistency analysis).  Again, Plaintiff only asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

The ALJ's discussion satisfies SSR 16-3p.  Plaintiff points to no records from the relevant period, other than her own subjective statements, to support any physical limitations beyond those incorporated into the RFC.  *See* R. 210-217.  The ALJ was entitled to compare Plaintiff's allegations to the objective findings and her activities of daily living from the relevant period.  *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider whether conflicts exist between claimant's statements and other evidence).

### C.    Plaintiff Timely Raised the Appointments Clause Challenge[7]

For purposes of this motion, the Commissioner concedes that the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution. The Commissioner only disputes whether Plaintiff's challenge was timely.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief."  *Lucia v. S.E.C.*, __ U.S. ___, 138 S. Ct. 2044, 2055 (2018) (internal quotations omitted).  In *Lucia*, the plaintiff raised the challenge "before the [Securities and Exchange Commission], and continued pressing that claim in the Court of Appeals and this Court."  *Id.*  Seizing on this language, the Commissioner argues Plaintiff's challenge is not "timely," because it was not made "at any point in the administrative proceedings." ECF No. 15 at 7.  However, as recently made clear by the Tenth Circuit, "underlying securities

---

[7] The Court has addressed this argument in prior decisions and reversed the Commissioner's decision to deny benefits based on the lack of a validly appointed ALJ.  *See, e.g., Daryn Lee W. v. Saul*, No. 18-CV-401-JFJ, 2019 WL 4751551, at *8 (N.D. Okla. Sept. 30, 2019).  The Commissioner has appealed these decisions to the Tenth Circuit.  The analysis below is identical to the analysis in prior decisions.

laws expressly require issue exhaustion." *Malouf v. S.E.C.*, 933 F.3d 1248, 1256 (10th Cir. 2019) (holding that Appointments Clause challenge was forfeited due to failure to comply with mandatory exhaustion requirement). In contrast, no Social Security laws or regulations require issue exhaustion. *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (explaining that, although statutes or agency regulations commonly require issue exhaustion in administrative appeals, no statute or SSA regulations do so). This has not changed in the nineteen years following *Sims*. Therefore, *Lucia* does not clearly or directly answer the timeliness question in the Social Security context. *See Sims*, 530 U.S. at 109-10 (explaining that, in absence of statute or regulation, courts must carefully consider type of agency proceedings before requiring issue exhaustion).

The question presented is whether a Social Security claimant must exhaust the Appointments Clause issue before the ALJ in order to raise it on appeal to a district court.[8] No circuit court has reached this precise question. Most lower courts addressing the question have held that the Appointments Clause issue is forfeited if not raised. *See, e.g., Fortin v. Comm'r of Social Security*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) (holding that Appointments Clause challenge was forfeited because not raised before the ALJ and providing thorough explanation of both sides of issue) (string-citing twelve cases supporting majority position). A minority of courts, employing varying rationales, have held that an Appointments Clause challenge may be raised for the first time before the district court. *See, e.g., Kellett v. Berryhill*, No. CV 18-4757, 2019 WL 2339968, at *7 (E.D. Pa. June 3, 2019) (relying on *Sims*' reasoning and "futility of objecting before an ALJ who was powerless to decide a constitutional question"); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352-362 (E.D.N.C. 2019) (relying on *Sims*' reasoning; separation of powers

---

[8] As explained below, Plaintiff was not required to exhaust the Appointments Clause issue before the Appeals Council in order to preserve it. *See Sims*, 530 U.S. at 112. The Commissioner's argument only succeeds, therefore, if Plaintiff was required to exhaust the issue before the ALJ.

concerns; reluctance to apply exhaustion requirements to constitutional issues; and courts being "poorly equipped" to fashion an issue-exhaustion requirement for SSA proceedings); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-26 (M.D. Pa. 2019) (limiting rationale to failure to exhaust constitutional issues and issuing alternative holding that, even if forfeited, court would exercise discretion to excuse failure to exhaust).  Within the Tenth Circuit, courts are split.  *Compare, e.g., Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (issue forfeited), *with Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019) (issue not forfeited) (holding that *Sims*' reasoning logically extends to other steps in the SSA process).

The Court joins the minority position and holds that a social security claimant does not forfeit an Appointments Clause challenge by failing to exhaust the issue before the ALJ.  First, this Court can discern no principled basis for distinguishing *Sims* from the instant case.  In *Sims*, the Court held that that a claimant need not exhaust issues in a request for review by the Social Security Appeals Council in order to preserve issues for appeal to a district court.  *Sims*, 530 U.S. at 112.  Although the Court declined to reach the question of "whether a claimant must exhaust issues before the ALJ," *id.* at 107, the underlying reasoning in *Sims* applies to the entire Social Security process.

Writing for the Court, Justice Thomas first explained that the rationale for requiring issue exhaustion is "much weaker" when the "administrative proceeding is not adversarial."  *Id.* at 110.[9] Writing for a plurality, he reasoned that the "differences between courts and agencies are nowhere more pronounced than in *Social Security proceedings*" and that "*Social Security proceedings* are inquisitorial rather than adversarial."  *Id.* at 110-11 (emphasis added).  The plurality further

---

[9] *Sims* is a plurality opinion, with Parts I and II-A garnering five votes and Part I-B garnering only four.

reasoned: "It is *the ALJ*'s duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is *similarly broad*." *Id.* at 110-11 (emphasis added).  In concluding that the analogy to judicial proceedings is at is weakest in the Social Security context, the plurality explained that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.* at 112.  One could easily substitute "the ALJ" for the "Council" in the preceding sentence.  The plurality also explained that SSA regulations make "quite clear" that the entire "SSA," not merely the Appeals Council, conducts its review in a nonadversarial and informal way.  *Id.* at 111.  Further, like the Appeals Council forms, the ALJ-level forms also require claimants to provide only a minimal amount of information, indicating the ALJ does not depend significantly on claimants to identify issues for review.  *See Bradshaw*, 372 F. Supp. 3d at 356-57 (explaining similarity of requirements in forms).  The overall reasoning in *Sims* indicates that the SSA regulatory scheme cannot be parsed into adversarial and non-adversarial stages for purposes of issue exhaustion.[10]  *But see Marilyn R. v. Saul*, No. 18-CV-4098, 2019 WL 4389052, at *4 (C.D. Ill. Sept. 13, 2019) (reasoning that claimants "have more responsibility for identifying the issues" at the ALJ level and that the ALJ level "is more adversarial").

---

[10] The law review article cited by the *Sims* plurality does not distinguish between the two levels of review and argues against any issue-exhaustion requirement in Social Security cases.  *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1341-42 (1997) (reasoning that "issue exhaustion is doctrinally and functionally incompatible with the SSA's inquisitorial model and operating reality" and that "courts should reject the doctrine's application to SSA proceedings").  That author reasoned that "[t]he degree of agency judicialization required to justify issue exhaustion would undermine the mass justice efficiency of the SSA's inquisitorial model, place substantial strain on an already overburdened and dysfunctional adjudicative bureaucracy, and still fail to protect the judicial review rights of claimants lacking counsel in agency proceedings."  *Id.*

Second, courts are not equipped to design a fair, well-considered issue-exhaustion requirement for Social Security proceedings. *See Bradshaw*, 372 F. Supp. 3d at 360. In this case, the Commissioner's arguments are not limited to the Appointments Clause context. *See* ECF No. 16 at 10 (arguing that courts should find forfeiture for any and all "arguments [a claimant] had not presented to the ALJ"). Yet as explained in *Bradshaw*, any judicially imposed issue-exhaustion requirement implicates several considerations: (1) the precise definition of "issue" or "argument"; (2) whether there should be an exception for constitutional issues;[11] (3) whether it should apply to all claimants or only those represented by counsel; and (4) whether failure to raise is an absolute bar or whether there are exceptions for newly discovered evidence. *Bradshaw*, 372 F. Supp. 3d at 360-61. Further, the exhaustion requirement requested by the Commissioner would impose an exhaustion requirement only at the ALJ level, and not at the subsequent Appeals Council level. *See Kim L.M.*, 2019 WL 3318112, at *6. It seems illogical to require exhaustion before the ALJ, but then excuse exhaustion before the final level of agency review. In short, the Court is wary of injecting an imprecise issue-exhaustion requirement into the complex and heavily regulated Social Security scheme, particularly where the Supreme Court failed to do so for the highest level of agency review.

Finally, language in Tenth Circuit law favors the minority position. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

---

[11] Some courts in the minority have found the constitutional nature of the question to weigh against forfeiture, essentially because courts should be most reluctant to relinquish their ability to decide constitutional questions. *See Bradshaw*, 372 F. Supp. 3d at 362; *Bizarre*, 364 F. Supp. 3d at 424. Some courts in the majority have found this nature to weigh in favor of forfeiture, because constitutional issues are not part of the typical "inquisitorial process." *See Marilyn R.*, 2019 WL 4389052, at *5 (reasoning that ALJ has no occasion to identify an Appointments Clause issue unless identified by the claimant); *Fortin*, 372 F. Supp. 3d at 565 (reasoning that where "the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges").

> Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) *need not preserve issues in the proceedings before the Commissioner or her delegates. See Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The Commissioner argues this holding is limited to issues that an ALJ has "an affirmative duty to address," such as conflicts between vocational expert testimony and the Dictionary of Occupational Titles. ECF No. 16 at 13. The Court agrees that the challenged issue is distinguishable, and the Tenth Circuit does not appear to have meaningfully considered whether *Sims* extends to the ALJ-level of review. But there does not appear to be any other published Tenth Circuit decision limiting this language in *Hackett* or reaching a contrary result. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2018) (imposing issue-exhaustion requirement at ALJ-level when claimants are represented by counsel). Accordingly, the most relevant published decision in the Tenth Circuit counsels against a finding of forfeiture.

## V. Conclusion

Plaintiff did not forfeit her Appointments Clause by failing to exhaust the issue before the ALJ. The Commissioner does not dispute that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. Accordingly, the ALJ's decision is **REVERSED** and the case is **REMANDED** for further proceedings before a constitutionally appointed ALJ.[12] All other issues presented on appeal are **AFFIRMED.**

**SO ORDERED** this 2nd day of April, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[12] The proper remedy for an invalidly appointed ALJ is a new hearing before a properly appointed ALJ. *See Lucia*, 138 S. Ct. at 2055.